Edwabd M. Hobby, S.
The proceeding is for construction of the will of the testatrix, Bessie B. Brest, and the judicial Settlement of the accounts of her executors.
Under her will duly admitted to probate, the testatrix bequeathed her entire residuary estate to five charities. They are respectively: Ellicottville Cemetery Association, Ellicottville, New York; Ellicottville Fire Company, Inc., Ellicottville, New York; the American Cancer Society, New York State Division; the Health Association of Cattaraugus County, Inc., and the Western New York Society for the Protection of Homeless and Dependent Children of Randolph, New York, commonly known as the Randolph Children’s Home. These residuary bequests exceed one half of the testatrix’s estate.
The distributees of the testatrix entitled to share in the event of intestacy are 29 first cousins. Three of the 29 first cousins have objected to the residuary bequests to charity. The objections are made under the provisions of EPTL 5-3.3. If the objections are sustained, the residuary bequests to charities must be reduced and a l/29th part of all gifts to charity in excess of one half of the decedent’s estate paid to each objectant. The executors and each of the five residuary legatees appear by counsel and urge that the objections be dismissed. The objectants also appear by counsel, one attorney representing two objectants and a separate attorney representing the third objectant.
The relevant portions of the applicable statutes are as follows : Subdivision (a) of EPTL 5-3.3: “ A person may make a testamentary disposition of his entire estate to any person for a benevolent, charitable, educational, literary, scientific, religious or missionary purpose, provided that if any such disposition is contested by the testator’s surviving issue or parents, it shall be valid only to the extent of one-half of such testator’s estate, wherever situated, after the payment of debts, subject to the following ”.
EPTL 1-2.10: “Issue: (a) Unless a contrary intention is indicated: (1) Issue are the descendants in any degree from a common ancestor. (2) The terms ‘ issue ’ and ‘ descendants ’, in subparagraph (1) include adopted children.”
*572 The arguments advanced by the three objectants in support of. their position are twofold. First, it is argued that the language of EPTL 5-3.3 as amplified by EPTL 1-2.10 necessarily includes them as proper parties to object to testatrix’s bequests to charity of more than 50% of her estate. As promised, extended and concluded the argument proceeds as follows : (1) subdivision (a) of EPTL 5-3.3 provides that such a disposition of property may be contested “by the testator’s surviving issue”; (2) that “issue” as defined under EPTL 1-2.10 are “ descendants in any degree from a common ancestor ” (emphasis supplied); (3) that objectants are descendants from a common ancestor, to wit: the grandparent of the testatrix who is also the grandparent of the objectants; (4) as a consequence thereof, objectants are proper parties within the statutory provisions to contest the excessive gifts to charity.
Secondly, in further support of their position, the objectants note that as first cousins of the testatrix they are distributees under the law and entitled to share in the estate in the event that their objections to the bequests to charity are sustained as valid. It is urged that it is illogical to conclude that one who might benefit from an objection cannot raise the objection. Regardless of conflicts or inadequacies of statutory definition, the proper construction of the statutes in any instance, it is urged, should be one determining that a distributee or any person who could benefit by application of the statute may object to testamentary gifts to charity in excess of one half of a decedent’s estate.
The problem of who are proper parties to object to testamentary gifts to charity is of long standing in this State. The original statute restricting gifts to charity was ■ adopted by the Legislature in 1860 (L. 1860, ch. 360). The purpose of the statutory enactment is important in considering its application. Its purpose was not to evidence a public policy against bequests or devises to charities (Trustees of Amherst Coll. v. Ritch, 151 N. Y. 282). Rather, it has been held that it was “ aimed simply at the giving of an undue proportion to charity by will, when certain near relations have, in the opinion of the Legislature, a better claim ” (Matter of Tone, 186 App. Div. 361, 366, affd. 226 N. Y. 696).
The initial statute (L. 1860, ch. 360) did not contain any provision specifying the persons who could properly contest devises or bequests to charity; nor was any such provision later added to the statute until the amendments that were passed in 1929, effective in 1930. (See section 17 of former *573 Decedent Estate Law in effect immediately prior to 1929 amendments; L. 1927, ch. 502.) Those persons who were authorized to contest excessive gifts to charity from the period of 1860 to 1930 were determined by a series of judicial decisions to include all persons who would benefit by voiding the excessive charitable bequests or devises (Decker v. Vreeland, 220 N. Y. 326; Matter of Opdyke, 230 App. Div. 290; Matter of Mosley, 138 Misc. 847; 50 Col. L. Rev. 94; 25 N. Y. U. L. Rev. 144; and see historical development outlined in Matter of Sonderling, 157 Misc. 231 and Matter of Holyland, 116 N. Y. S. 2d 628).
The original statute, found in section 17 of former Decedent Estate Law, was materially revised in 1929. (See L. 1929, ch. 229, eff. Sept. 1, 1930.) The revision, the result of a commission study, had as one of its major purposes the reduction in the number of persons who could contest excessive bequests to charity. “It is also now proposed that the right to object to the will shall be limited to those whose survivorship gives the ground for the objection. Instances are not infrequent of remote relatives making objections to the will and receiving portions of the estate bequeathed for charitable purposes — a result which is not within the apparent purpose of the legislation”. (N. Y. Legis. Doc., 1930, No. 69, p. 74; Matter of Sonderling, 157 Misc. 231, 233, supra; Matter of Holyland, 116 N. Y. S. 2d 628, supra; 50 Col. L. Rev. 94, 97, supra.)
As a consequence of the 1929 amendments a new and restricing clause relative to objections to testamentary gifts to charities was added to section 17 of the Decedent Estate Law. That amended clause provided: “ The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent ”.
There followed after the 1929 amendments to section 17 of the Decedent Estate Law a series of cases construing the revised statute and determining who were and who were not members of the newly restricted class authorized to contest excessive testamentary gifts to charity. Uniformly, these decisions strictly construed the amended statute and confined the right to contest to those mentioned in the amendment (Matter of Plaster, 266 App. Div. 439, 441, affd. 293 N. Y. 822; 12 St. John’s L. Rev., pp. 193, 201; Fourth Report of Temporary State Commission on Law of Estates, p. 209 [1965]).
Included in these decisions and of particular application to the instant case was the determination in Matter of Holyland (116 N. Y. S. 2d 628, supra). There Surrogate Witmeb made *574 the specific holding that a first cousin who was the sole distributee of the testatrix was not a person who could object to testatrix’s bequest, to charity of more than one half of her estate. Similar decisions holding that a brother, sister, nephew and niece, even when distributees, had no right to contest where excessive testamentary gifts to charity were made (Matter of Wadsworth, 142 Misc. 717, affd. 236 App. Div. 712; Matter of Baeuchle, 82 N. Y. S. 2d 371, affd. 276 App. Div. 925, affd. 301 N. Y. 582; Matter of Korzeniewska, 163 Misc. 323; all reviewed in Fourth Report of Temporary State Commission on Law of Estates, p. 210 [1965], supra, and Matter of Holyland, supra, p. 631).
In perspective then it is clear that from 1860 to 1930 the objecting first-cousin distributees in the case at bar would have been proper parties under section 17 of the Decedent Estate Law. It is equally clear that subsequent to the amendment of the statute in 1930, they would have been improper parties. For decision, is their status under the current statutory provisions which are contained in EPTL 5-3.3.
In 1966 the EPTL was adopted by the Legislature as a replacement of the Decedent Estate Law. That new law was recommended to the Legislature by a special commission on estates following a lengthy and detailed study by that body. As originally proposed by the commission and introduced in the Legislature, the EPTL contained no provision at all in reference to limiting testamentary gifts to charities. Instead the commission proposed that a part of the EPTL be left open for statutes relating to the right of dependent children to elect to take against a will. These as later proposed were generally similar in nature to the right of election provided a surviving spouse. These proposed statutory enactments it was felt would be a sufficient substitute for the provisions of section 17 of the Decedent Estate Law to protect the children of a decedent and would permit the elimination of the provisions of section 17 of the Decedent Estate Law. The proposed broad based statutes for the protection, of minor children were submitted by the commission, introduced in the Legislature and were twice defeated in 1965 and again in 1966. Faced with these rejections, the commission reviewed its earlier 1965 study of section 17 of the Decedent Estate Law and submitted a revision of it to the Legislature. This revision of section 17 of the Decedent Estate Law was adopted by the Legislature as EPTL 5-3.3 and became effective September 1, 1967.
*575 Relevant to the instant consideration is the fact that the new statute limited the right to contest excessive testamentary gifts to charities to “testator’s surviving issue or parents” (see EPTL 5-3.3, subd. [a]). This is to be contrasted with the complementary provision of former section 17 of the Decedent Estate Law which had limited the contesting’ parties to a “surviving husband, wife, child, descendant or parent”.
The reasons that prompted the change in statutory language are not stated in any of the commission’s studies. However, they may be gleaned from a review of the changes that the commission and in turn the Legislature sought to effect. The terms “ husband ” and “ wife ” were properly omitted in view of the commission’s determination that the rights of a surviving spouse were already sufficiently protected in procedures which gave such survivor a right of election to take against the will of the deceased marriage partner. It was stated to be the commission’s intention that the former rights of a husband and wife under section 17 of the Decedent Estate Law be omitted (Sixth and Final Report of Temporary Commission on Law of Estates, pp. 18, 67 [1967]). Since a child is clearly a “ descendant ” and an “ issue ” of the decedent, the continued inclusión of that term was unnecssary for the reasons of duplication and redundancy. The term “parent” was continued. This leaves then only the change of the term ‘ ‘ descendant ’ ’ to that of “issue ”. These terms are synonymous. (Soper v. Brown, 136 N. Y. 244, 249, quoting Jarman on Wills and other text; Matter of Mott, 213 N. Y. 168; Matter of Holyland, 116 N. Y. S. 2d 628, 631, supra, and cases cited; 9 Rohan, N. Y. Civ. Prac., par. 1-2.10, subd. [1].)
Thus, if one confines his comparison to subdivision (a) of EPTL 5-3.3 and the counterpart provisions in section 17 of the Decedent Estate Law, the only change reflected in the adoption of subdivision (a) was the intentional elimination of husband and wife as members of a class that could object to excessive gifts to charity. This is not to say that additional restrictive provisions were not added in other paragraphs of the new statute. They were and will be later noted.
The difficulty presented and pressed by the objectants does not arise from EPTL 5-3.3. It arises from EPTL 1-2.10. That statute defines the term ‘ ‘ issue ’ ’ which is used in subdivision (a) of EPTL 5-3.3. Since “ issue ” in EPTL 1-2.10 is defined as meaning ‘ ‘ descendants in any degree from a common ancestor ” (emphasis supplied), the objectants urge its application *576 in support of their position that they are proper parties in this proceeding.
In taking this position the objectants ignore the limitations in subdivision (a) of EPTL 5-3.3 that it is only the “testator’s surviving issue ” who may object. By inclusion of EPTL 1-2.10 they seek to alter the plain meaning of subdivision (a) of EPTL 5-3.3 by changing the intended common ancestor from the testator to the testator’s grandparent. In brief, what the objectants seek to do is use EPTL 1-2.10, not to explain and determine the meaning of “testator’s issue”, but rather to substitute someone else’s issue. This is the flaw in the objectants ’ reasoning. The issue of which the statute (EPTL 5-3.3, subd. [a]) speaks is already delimited to mean the issue of the testator. It is the testator that is the common ancestor within the meaning of EPTL 1-2.10. One does not properly determine on' the meaning of 1 £ testator’s issue ’ ’ by substituting the term “issue” and defining it any morethan one properly substitutes the term “ genus ” for “ specie ” and then offers the meaning of genus as a definition of specie.
The court concludes that the term “ testator’s issue” as used in subdivision (a) of EPTL 5-3.3 means the lineal descendants of the testator inclusive of those lawfully adopted and no others.
To the additional argument of objectants that, as distributees of the testatrix, they should be permitted to object in any event, there is an answer. It is that such 1 £ argument should be addressed to the legislature instead of the court ”. (Matter of Holyland, 116 N. Y. S. 2d 628, supra.) As sufficient as that answer was in considering the effects of the 1929 amendments it is all the more complete in the light of the later amendments effected by adoption of EPTL 5-3.3. For instead of expanding the members of the class who could properly object to testamentary gifts to charity, the EPTL further limited the number. This is precisely what the commission intended. This intentional curtailment is reflected several ways: by the elimination of a surviving spouse as a proper objecting party; by making it clear that under the revised statute that no contest to invalidate an excessive disposition is available to even a designated member of the permitted class unless such member will receive a pecuniary benefit from the contest; by providing that a designating member of the permitted class who does not object cannot share in any fund recovered by another person; and by restricting the rights of the members of the permitted class to object only to wills made by citizens of the State of *577 New York (see Sixth and Final Report Temporary Commission on Laws of Estates [1967], pp. 18, 19, 67 and Fifth Report Temporary Commission on Laws of Estates [1966], pp. 206-230).
Contrary to the argument of the objectants, the 1967 amendments to section 17 of the Decedent Estate Law did not revert that statute to its 1860 to 1930 status. As indicated the narrowing trend of the 1929 amendments has been continued. It is still not sufficient to object to excessive gifts to charity that one be a distributee, one must also be a member of the statutory class that is authorized to object. In the case for decision, the objectants are not members of this statutory class.
For the reasons stated, it is held that the objectants, first cousins and distributees of the testatrix, have no right to object to the will under EPTL 5-3.3 and the objections are dismissed.
In view of the decision which has been reached, it is not necessary to consider the question of whether or not the residuary legacies to the Ellicottville Fire Company, Inc. and the Ellicottville Cemetery Association are testamentary dispositions for ‘ ‘ benevolent, charitable, educational, literary, scientific, religious or missionary purposes ” within the meaning of EPTL 5-3.3.